[Civ. No. 20367.   Second Dist., Div. One.   Jan. 31, 1955.]

VOLLSTEDT KERR LUMBER COMPANY (a Corporation), Respondent, v. PRODUCTION HOMES, INC. (a Corporation), Defendant; CLYDE CONOVER et al., Third Party Claimants and Appellants.

Charles W. Jamison for Third Party Claimants and Appellants.

Griffith & Thornburgh, Laselle Thornburgh, King, Miller, Anderson, Nash & Yerke, Robert S. Miller, Frederic A. Yerke, Jr., and Paul R. Meyer for Respondent.

WHITE, P. J.—The instant appeal is taken from an order determining that third party claimants have no right, title or interest in certain lumber attached by respondent. Following is a résumé of the pertinent events and proceedings.

The defendant, Production Homes, Inc., was a subcontractor obligated to construct, at its Goleta plant in Santa Barbara County, wall sections and roof members for 337 living units, 377 garage and laundry units, one pumphouse and one office building, and to erect them, in accordance with Navy specifications, on a certain site near Marine Corps Depot of Supplies, at Barstow, in San Bernardino County. Plaintiff sold lumber and delivered it to defendant at Goleta, "on the specific understanding and agreement between the parties that all such materials were to be used exclusively for the construction of particular buildings to be erected on certain premises located near the Marine Corps Depot of Supplies, Barstow, San Bernardino County, California." Between June 17, and September 17, 1953, under said agreement, defendant ordered and plaintiff delivered at defendant's Goleta plant lumber of the value of $145,958.92. Between June 17 and September 23, 1953, defendant constructed at Goleta and erected at Barstow, interior and exterior wall sections and roof members for 167 living units, 74 garages and 10 laundry units. September 17, such construction at the Goleta plant was suspended because a creditor of defendant, other than respondent, attached all the assets of defendant including the lumber now attached by respondent.

September 23, 1953, defendant executed and delivered to appellants an ordinary common law assignment of all its assets for the benefit of its creditors. On September 25, 1953, the attachment of such other creditor was released from the lumber here involved; and on the same day appellants re-

corded their assignment and took possession of defendant's Goleta plant and other assets, including the lumber now under respondents' attachment. Said assignment expressly authorized appellants to complete defendant's contracts. Appellants, however, did not "continue with carrying out the contract for furnishing materials" to the general contractor on the buildings for which the attached lumber was to be used exclusively. On September 29, 1953, appellants notified respondent, through their respective attorneys, that the general contractor had declared defendant in default and would not accept further materials under the contract. On or about October 29, 1953, respondents filed this action for lumber sold and delivered and attached the lumber then remaining at defendant's Goleta plant. By their third party claim, appellants aver that on September 25, 1953, they, "as trustees for the benefit of all the creditors" of defendant, took possession and "now are in full and complete possession of said assets," and that the attached property "belongs to" them. They also set forth that defendant's debts total approximately $504,000, its assets approximately $150,000 including the attached lumber.

After this action was filed, respondent allegedly discovered that $14,102.01 of the lumber sold to defendant had been "obtained by fraud." An action was brought in the United States District Court for rescission of the sale of that lumber, and the judgment sought in the instant action was reduced by that amount. Judgment by default was rendered in the instant action December 24, 1953, for $131,856.91. No appeal has been taken from the judgment.

The petition to determine title to property claimed by third party was heard upon stipulation of facts, and both oral and documentary evidence, and the instant appeal was taken from the decree determining that "Third Party Claimants Have No Right, Title, or Interest in Property Attached," dated December 21, 1953.

Appellants, in their opening brief, state that "The sole issue on appeal, is whether a Vendor who has sold building materials to a Vendee for use in a specific construction project can levy an attachment against such materials in an action for the purchase price, after title and possession of such materials has been transferred by Vendee to Assignees for benefit of creditors generally, and where it has become impossible for Vendee to continue to furnish said materials for said building project."

Appellants rely upon *Brainard* v. *Fitzgerald,* 3 Cal.2d 157, 163 [44 P.2d 336], where it was held that the general assignment for the benefit of creditors prevailed over a subsequent attachment, and that the assignment was not a violation of section 3440 of the Civil Code, and wherein it was further said:

". . . The assignment herein having been made in good faith, the property right passed out of the copartnership debtor, and thereafter no legal title existed in it on which the attachment could have fastened.

"Because of varying statutory provisions there involved, we shall not undertake to refer to the numerous authorities from other jurisdictions wherein common law assignments have been held to take priority over subsequent attachments or executions of an opposing creditor. In the absence of any conflict with or violation of our statutory law, we are not inclined to interfere with the practice developed by local boards of trade of procuring assignments, executed in good faith, for the benefit of creditors generally. Experience has shown that this practice has much to commend it."

Appellants' statement of the "sole issue" hereinabove quoted ignores the real issue before us on this appeal, to wit: Was title to said lumber transferred to appellants by defendant's assignment for the benefit of all his creditors?

Appellants are not purchasers for value. (See *First Nat. Bank of Stockton* v. *Pomona Tile Mfg. Co.,* 82 Cal.App.2d 592, 609 [186 P.2d 693].) Their position is the same as the positions of those they represent, the same as other creditors trying to enforce debts due by the purchaser of the lumber other than the "debt due for the purchase-money thereof." In principle there is no difference between appellants' position and that of an attaching creditor other than respondent, if. between the levy and release of the attachment, defendant had executed and delivered to him a bill of sale of the lumber.

According to appellants' brief, "At all times *after* the assignment of assets for the benefit of creditors, on September 23, 1953, Defendant was unable to continue to furnish the lumber to Harsh Construction Company (the general contractor) for use in the Barstow Project." (Emphasis added.)

Section 1202.1 of the Code of Civil Procedure provides: "Whenever materials shall have been furnished for use in the construction . . . of any building . . . such materials shall not be subject to attachment, execution, *or other legal process,* to enforce any debt due by the purchaser of such

materials, except a debt due for the purchase-money thereof, so long as in good faith the same are about to be applied to the construction . . . of such building. . . .'' (Emphasis added.) This statute has not been construed by our courts, nor has our attention been called to any decision by the courts of another state on the question presented.

Appellants concede that the attachment on September 17, 1953, by a creditor other than respondent was ineffective under said section 1202.1; and they further concede that they or any or all of the creditors represented by them could not have attached or levied execution upon said lumber on September 23, 1953, to collect the debts due them from defendant. They further concede that a transfer at that time by operation of law because of defendant's death or bankruptcy would have been ''other legal process'' and would have given the creditors represented by them no right to have said lumber applied in payment of the debts due them.

But, appellants take the position that the procedure followed by them—(1) a wrongful attachment to assure that the lumber was no longer ''about to be applied to the construction''; (2) a general common law assignment for the benefit of creditors; and (3) release of the attachment and delivery of the lumber to the assignees for the benefit of the creditors—effectively removed the lumber from the protection of section 1202.1, and is not such ''other legal process'' as is prohibited by said section.

Appellants urge that ''Section 1202.1 does not say that the purchaser cannot sell the materials or otherwise voluntarily divest himself of title,'' and that the purpose of the section is to protect the purchaser against his other creditors, and not to curtail purchaser's right to deal with the materials and to sell or transfer them as he sees fit. ▪ Manifestly, however, the main purpose of said section 1202.1 is to protect the supplier against the other creditors of his purchaser in the interim between the delivery of the materials and their incorporation into the building for which they were sold. As soon as the materials have been so used, the supplier is given a lien not only upon the materials, but upon the building and the land upon which they are used. (Code Civ. Proc., § 1181 et seq.) ▪ Considering these provisions together, it is clear that the Legislature, by its use of the phrase ''other legal process, to enforce any debt due . . . except a debt due for the purchase-money thereof,'' intended that such materials ''shall not be subject'' to transfer to other creditors in satis-

faction of their debts by assignment for the benefit of creditors.

We are convinced that, under all the facts and circumstances disclosed by the record before us on this appeal, title to the lumber so attached by respondent had not passed to appellants as assignees for the benefit of creditors by defendant's voluntary assignment of all its assets to them under date of September 23, 1953. There is no evidence of any transfer, or attempt to transfer, said lumber at a later date when said lumber was not "about to be applied to the construction." Therefore the title to the lumber remained in defendant and was subject to respondent's attachment on October 29, 1953.

A further reason for holding that appellants did not take title to the lumber involved in the instant action is that "Property exempt from execution and insurance upon the life of the assignor, do not pass to the assignee by a general assignment for the benefit of creditors, unless the instrument specially mentions them, and declares an intention that they should pass thereby." (Civ. Code, § 3470; 5 Cal.Jur.2d 400; 4 Am.Jur. 347.) Assuming that, at the time of defendant's assignment to appellants, said section 1202.1 of the Code of Civil Procedure in no way limited defendant's power to transfer said lumber, it undoubtedly exempted said lumber from execution, except by respondent. Consequently, as "property exempt from execution," said lumber did "not pass to the assignee by a general assignment for the benefit of creditors," because said assignment contains no special mention of the lumber and no declaration therein of an intention that the lumber "should pass thereby."

The order is affirmed.

Doran, J., and Drapeau, J., concurred.